Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office for Mr. Foley, and I will attempt to reserve two minutes for rebuttal. Your Honors, the first issue I wanted to address is the Respondent's argument that there's some uncertainty about the fact that Attorney Greenberg did not send Mr. Foley the district court denial of his habeas petition in 2004. I think Attorney Greenberg says very clearly, I didn't send it to him. He adds more detail to make that understandable, but I don't think he waivers on that. And also Mr. Foley's behavior, once he does know, suggests that he was a litigant who would have wanted to appeal, undoubtedly if he had known in 2004 that his petition was denied, would have asked that an appeal be filed. So I think that fact is very well established. Is there anything in the record to show why Mr. Foley waited 4 1⁄2 months before filing his motion for relief? Right. Well, Your Honor, he first learns in 2010, February of 2010, he gets a letter from the clerk letting him know your petition was denied back in 2004. At that point, we can see from his first following letter of March 4, 2010, he's like, I can't believe this happened. Has there been an appeal and I didn't even know about it? So at this point, he's very much in the dark, and he thinks perhaps there's even been an appeal he is not aware of. He ---- But what about the period Judge Nelson's calling your attention to between February and July? Okay. So in that period, he is trying to find an attorney to help him. He has finally gotten the declaration from the attorney admitting that he never sent him the decision. And he says, I'm indigent, in prison, I've been trying to find an attorney. Because of my indigence, I've been having trouble. So here it is. And he does his pro se motion. At that point, did he have a file? I couldn't find anywhere in the record where he got anything from Mr. Greenberg. I don't think he did. I don't even know if he ever got actually the district court order denying the petition in 2004 from anyone. Could you back up? Because this is a matter of some concern to me. So Mr. Greenberg was trial counsel? Mr. Greenberg, I doubt, was trial counsel, but he was counsel ---- I think the record says he was. So I'm envisioning a file there. Well, he certainly was counsel for the direct appeal in State court. Right. And so his declaration says that as to the ---- oh, maybe it was the appeal in State court. That could be counsel. I believe he was. So forgive me. All right. So he's in State court. So again, I'm envisioning a file of some sort. And then in his declaration, he indicates that as to the Federal petition in his file, which I think he said only existed on his computer, there was the petition and a request for an extension and the traverse, and that's it. Correct. But I still ---- so it was a very modest file at the Federal level, apparently. But I can't see where your client ever received it. So this all gets back to Judge Nelson's question. I'm trying to figure out what he was doing in that 4-month period of time to prepare this motion. Well, I believe ---- I mean, he says in his cover letter with the motion, I've been trying to find an attorney to help me. I'm not educated in the law. And, you know, I have been unable to find a new attorney. And it should be noted that, I mean, the whole time this is happening, Greenberg is still a counsel of record. Really, Greenberg, you know, should have moved to withdraw if he was not going to act as his counsel. When you say the whole time, surely that's not true between February and July. Greenberg, the first time we see Greenberg terminated, it's only an entry on the docket. There's no order terminating him. And that does not show up until July 2nd of 2012. So from February 25th of 2011, when Greenberg files his declaration, to this 4 months, 4-1-1-2 months, until July 10th, 2011, when the letter and pro se motion are considered the 60B motion, Greenberg is still counsel of record. Now, Foley is trying to find new counsel. But, you know, I don't know that he knew that he could file a pro se motion. But he's casting about, thanking the clerk for their help, saying he doesn't really understand the law, but he's doing his best, and he gets the motion filed. And 4-1-1-2 months is not longer than the period in the Taney case or the Lowe case. In Mackey, I believe it was about 3 months from the time client knows his attorney has deceived him until the date that attorney actually did go ahead and do the motion  So we don't know. Ginsburg, I read the Lowe case, though, the Lowe was much more diligent than your client. I think we have to look at the context of my client's position. He's indigent, in prison, not well-educated at all, and, you know, he's doing his best, he's writing, trying to get information, asking the district court to order his attorney to give him information. So he's trying from prison to do the best he can, and I think he fulfills the diligence requirement given his position. Your Honors, if there's no further questions, I'll save my time for rebuttal. That's fine. Good morning, and may it please the Court. Sally Espinosa, Deputy Attorney General, on behalf of Respondent Worden. Could you just answer the question of why you feel that Mr. Foley was not diligent under the circumstances of this case? Certainly, Your Honor. As an initial matter, the habeas petition was filed in 2001, which was now going on 14 years, or actually over 14 years ago. And Mr. Foley admits in one of his first letters to the Court that he, well, in the initial correspondence, he asks what's happening, what happened with my case. He knows no later than February 25, 2010, that his habeas petition had been denied. And he waits a year and four months from that initial date to file his Rule 60b6 motion. He didn't just wait, right? He was trying to get information from the Court. The lawyer wasn't responding even when the Court served him with his letter. So there's certainly activity going on there, except for the last four and a half months. There is some activity, Your Honor. But also, his letter of dated March 25th, he indicates, I had a feeling that something was wrong, as it had been nine years since my filing. I know I had another level of appeal, but I'm pretty sure I'm screwed now because of the time that's passed. So in this, this is, again, February 25, 2010. He knows there's another level of appeal. He knows that something went wrong because there has been, he has occasioned an enormous delay of nine years between even inquiring about his habeas petition. Right. And so what is your response to the case law we have out there where if a defendant has been told by an attorney, I will let you know, I will serve you a copy, you know, when this happens, that in those instances, when the attorney has not done so, we have found abandonment? Well, Your Honor, in this case, if going back to Mr. Greenberg's declaration, he says that he told Petitioner, I'll do the petition anyway, and he's talking in the context of talking about whether or not Petitioner's family can pay him. I'll do the petition anyway, if you come up with anything fine, it'll be frosting on the cake. If not, I'll put something together so you can make it to Federal court. So even from the beginning of this attorney-client relationship, Petitioner was certainly on notice that Mr. Greenberg intended, as we see from his declaration, to do the petition and to just get Mr. Foley into Federal court. And so it doesn't seem that there was more. He didn't, unlike some of the cases from the circuit, he didn't deliberately mislead Mr. Foley into believing that he was going to do anything more than that. And as we see, over time, unfortunately, he indicates in his declaration that he didn't respond to Mr. Foley's letters and that even his letter of February 25, 2011, attached to his declaration, he says to Mr. Foley, don't expect me to, I think his quote is, do not expect the court to act on its own without any further motion or request from you. I guess I don't understand your position. Are you saying that the Petitioner, that he was, that the Petitioner should have known then that he was being strung along and that he wasn't going to have anything happen? Well, my position is that if, Mr. Greenberg indicated to him, this is what I'll do for you. I will do your petition. I will get you into Federal court. And so that's, he did what he agreed to do. His mistake was in not withdrawing from the case. But even. But at ER 216, to go to Judge Schroeder's point, the lawyer said, quote, I failed to inform Mr. Foley of this result at any time and I failed to preserve his appellate rights. I mean, the implication is that he intended to, but that he mistakenly understood this person was a former client, so he disregarded his correspondent. Right. But, I mean, again, this, he's reconstructing this declaration after many, many years have passed. Right. But he also still goes on to say, I'll do the, he remembers saying, I'll do the petition, whether or not your family can pay me, and I'll put something together so you can make it to Federal court. So can you help, I don't understand that. So he should never, so he didn't have any duty to tell him that it had been denied? No, he certainly did, but my position is that he, according to his declaration, he agreed to do the petition and to get Mr. Foley into Federal court. And it seemed like that was the extent of what he was going to do. His mistake was in not withdrawing from the case. He entered an appearance as attorney of record. He did. He told him, I'll file your petition. So, and he didn't, and then he didn't tell him that it had been denied. And the petitioner had no way of knowing what had happened. That's correct. So my position is that he, Mr. Greenberg agreed to do the petition and to get Mr. Foley into Federal court, but after that, it seems that he didn't inform him of the denial of his, based on his declaration that, I mean, it's likely that he didn't inform him, but that should have put Mr. Foley on notice that he. What should have? Well, a number of things, including the fact that Mr. Foley didn't respond or Mr. Greenberg says I didn't respond. He, he wrote me letters. I didn't respond to his letters. He says he doesn't respond to the, the district courts. Sending him Mr. Foley's letter on March 30th. And so, and then he says on February 25th, 2011, don't expect the court to act on its own without any further motion or request from you. So at some point, I think Mr. Foley, it was incumbent upon him to connect the dots here and realize I need to take some action here, because with the passage of time, I mean, he has, he, his, his, that's why his Rule 60b-6 motion is untimely, because he didn't do any, he sat on his rights, basically. The fiduciary duty is the lawyers, though. The fiduciary duty? Uh-huh. Well, but in this case, I mean, like I said, Mr. Greenberg's mistake was in not withdrawing from the case. And in others, in other cases, we have found that where, like Mackey, for example, we have found where a lawyer didn't abide by the rules to appropriately withdraw, that the lawyer had abandoned the client. Right, Your Honor. So how do you distinguish your case, please? Well, because for at least two reasons. First of all, Mackey, I would explain that Mackey, in this Court did not directly in Mackey say, this Court set forth basically what a district court can do, not what it must do under these circumstances. And also, I would also point to the fact that in Mackey, between the time that, let's see, the Petitioner realized that he, well, first of all, the Petitioner was diligent in trying to determine what had happened with his habeas petition, having written to the Court 8 months after entry of judgment, and also his delay in filing his Rule 60b-6 motion was only about 3 months, versus what we have here, between the time that Mr. Foley realized in February 2010 that his habeas petition had been denied, and then he waits a year and 4 months to file his 60b-6. Well, except here's the problem, and then I'll — I don't mean to belabor the point, but it's not — it's not — by the time he starts writing to the Court, that's because he's been writing to counsel for some period of time, we can't tell, over some extensive period of time, and he's getting no response. So — so I don't read from that that he's sitting on his rights. I read from that that he's trying to get his lawyer's attention, and he can't get a response. Not the first time we've read that allegation, certainly, in a criminal case, but in this case, the attorney's declaration comes forward and says, yep, he was writing to me and I was ignoring him. Right. And so we don't know how many times he wrote to Mr. Greenberg. Right. Right. But as — as his letters demonstrate, he — he knew he — he says, I had a feeling something was wrong. I knew I had another level of appeal. And so when Mr. Greenberg didn't write back to him, it was — it was incumbent upon Mr. Foley to exercise some degree of diligence. Do we know when that was? When which was? Well, when you say — when — when Mr. Greenberg didn't write back to him, at that point, it was incumbent upon Mr. Foley. That's your argument. So for us, on appeal, what's that point in time where we would start — start the clock running? Well, it's — it's hard to tell because Mr. Greenberg just says — he — he makes reference to — I remember that Mr. Foley wrote to me. He doesn't — he said — he says letters, plural, so I presume that that's more than one. Right. And we don't know what the dates were. We don't know. We don't. But so — I mean, but at a minimum, I would say that February — his — Mr. Foley's letter dated February 25, 2010. He has already heard back from the district court informing him, your petition has been denied. Fair enough. So — So at that point — can you help me out? At that point, we have a person in prison — the crime was in 1995. The State court proceedings ended in 2000. The Federal petition was filed in 2001. So it's a pretty ancient history. I mean, maybe about a decade had gone by, certainly. And — and he has no file. Right? But — but your — your position is that he's — it's — even given that situation, that a four-and-a-half-month delay is too long to file the Rule 60 motion? Well, I would — to back up just a bit, I would characterize it more as a year-and-four-month delay between when he knows his — his federal habeas petition has been denied and the time he files his Rule 60b-6 motion. OK. And his Rule 60b-6 motion is about three-quarters of a page, the gist of which is, I ask the court to allow me back in to the courts to continue my appeal rights afforded to me under the Constitution. So this is a — a very brief letter that he, in that year and four months, could have put — assembled such a letter at any point in that time, any — or much sooner than the year and four months. Thank you, counsel. I appreciate your argument. Thank you. We appreciate your argument. Counsel, I think you have some time left on the clock, if you'd like to be heard. Thank you. Your Honors, I just want to make a few brief points. In terms of — counsel has pointed out that Mr. Greenberg's early letter to Mr. Foley said, you know, I'll do what I can to get your petition filed, and she makes the argument that he didn't really claim he was going to do too much more. But the point is, he stayed on as counsel of record. If he really said, I'm not going to do this pro bono anymore, he could have moved to withdraw. That would have placed Mr. Foley in the position of getting service from the court and opposing — the opposing party. And, of course, at that point, Mr. Foley would have been served with the denial. And so I think, you know, in the — Maples and Mackey talk about this. Part of the problem with abandonment is when an attorney actually stays on as counsel of record, the litigant is left without getting served with anything, and that's what happened in this case. I also wanted to talk about the period of time between February of 2010, when Ms. Trifoli knows something's gone wrong, and the date he finally files his Rule 60B motion. Mr. Foley bore a heavy burden of proof to show that he had been abandoned. Certainly, it would have been surprising to the Court that if he had wanted to file a notice of appeal, he didn't just file it back in 2004. So he needs to really establish that the reason it didn't happen is he was abandoned by counsel. That is a very serious, difficult threshold to show, because it's not reasonable attorney error. It's actually breaking that fiduciary duty. And so he does not have that evidence until the February 2011 declaration Greenberg finally files. The whole rest of the time, he's trying to get that evidence. And then, as I said, I think the 4-month period is really in line with other periods in other Rule 60B cases, such as Lowe and Mackey, where it does take some time to find new counsel or to just figure out the law enough to do this. It's also worth remembering that the Maples and Mackey decisions didn't come down until 2012. That was when those principles of abandonment and use of Rule 60B-6 were really set out. Sotomayor, can you help me? What was the status of this case when Maples came down? What was the status of this case? So Mr. Foley had filed the pro se motion in the 2011, so at least I forget how many months prior, but that was on file. The district court hadn't really done anything. Then I believe it's January of 2012, Maples comes out. Maybe a few months later, Mackey comes out. And then within two weeks of that, the district court decides I'm going to characterize this as a Rule 60B motion. So that's when, and then he, but he's going back to the 2011 pro se motion that was prepared before Mackey and Maples. But by the time the Court ruled, it had Mackey and Maples. Correct. Correct. So, Your Honors, thank you very much. Thank you both for your argument. That concludes our argument for today. We'll stand in recess until tomorrow.
judges: Schroeder, Nelson, Christen